# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MACHINERY MOVERS, RIGGERS AND | ) | |
| MACHINERY ERECTORS, LOCAL 136 | ) | |
| DEFINED CONTRIBUTION RETIREMENT | ) | |
| FUND; MACHINERY MOVERS, RIGGERS | ) | |
| AND MACHINERY ERECTORS, LOCAL 136 | ) | |
| SUPPLEMENTAL PENSION FUND; | ) | |
| MACHINERY MOVERS, RIGGERS AND | ) | |
| MACHINERY ERECTORS, LOCAL 136 | ) | |
| HEALTH AND WELFARE FUND; | ) | |
| MACHINERY MOVERS, RIGGERS AND | ) | |
| MACHINERY ERECTORS, LOCAL 136 | ) | Case No. 03 C 8707 |
| SUPPLEMENTAL UNEMPLOYMENT FUND; | ) | |
| MACHINERY MOVERS, RIGGERS AND | ) | Judge Virginia M. Kendall |
| MACHINERY ERECTORS, LOCAL 136 | ) | |
| SAVINGS AND VACATION FUND; and ERIC | ) | |
| DEAN, JEFFREY HOPKINS, WILLIAM | ) | |
| JOYCE, and VERN STOUB, IN THEIR | ) | |
| OFFICIAL CAPACITY AS THE TRUSTEES | ) | |
| OF THE PLAINTIFF FUNDS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NATIONWIDE LIFE INSURANCE | ) | |
| COMPANY, NATIONWIDE FINANCIAL | ) | |
| SERVICES, INC., and NATIONWIDE | ) | |
| INVESTMENT SERVICES CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are employee benefit plans (the "Plans" or "Plaintiffs") for members of Local 136

of the Machinery Movers, Riggers and Machinery Erectors. Plaintiffs engaged Joseph/Anthony and

Associates, Inc. ("JAA") as a third party plan administrator and plan consultant. JAA's president

was Michael Linder. Liz/Mar and Associates, Inc. ("Liz/Mar"), a brokerage firm controlled by

Linder, received the fees for JAA's and Linder's services. Through JAA and Liz/Mar, Linder

allegedly engaged in certain unlawful transactions with Nationwide Life Insurance Company ("Nationwide Life"), National Investment Services Corp. ("Nationwide Investment") and Nationwide Financial Services, Inc. ("Nationwide Financial")(collectively, "Defendants"). In particular, Linder, JAA and Liz/Mar allegedly received exorbitant fees and commissions from Defendants in violation of § 406(b)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et. seq.* Linder, JAA and Liz/Mar also failed to diversify the Plans' investments and made investments with Defendants outside the Plans' guidelines in violation of § 404(a)(1) of ERISA.

Defendants have now moved to continue the stay of this action pending resolution of the criminal proceedings against Linder or, alternatively, to dismiss the claims against them. Because Defendants have not met their burden of demonstrating that a stay is necessary in the interest of justice, the stay is lifted. However, Linder's and Brdecka's depositions will not be taken before they are sentenced on November 17, 2006. As to the merits, even though Defendants are not fiduciaries with respect to the Plans and ERISA does not impose any specific duty on Defendants, they can be held liable under § 502(a)(3) for their alleged participation in Linder's violation of his fiduciary duties. If Plaintiffs can establish their claims, they are entitled to pursue equitable relief against Defendants' ill-gotten profits. No claim, however, lies in equity to recover from Defendants the allegedly excessive commissions and fees that Defendants paid to Linder and his controlled entities. Finally, Plaintiffs have stated a claim under Rule 12(b)(6) against all Defendants for allegedly profiting from their participation in the unlawful transactions involving Plan assets.

**Background**

Plaintiffs filed their original complaint on December 2, 2003, naming as Defendants Linder,

JAA, Liz/Mar and Nationwide Investment Services Corp. On January 27, 2004, a federal grand jury

sitting in the Northern District of Illinois indicted Linder and Fred Scheier, at the time a trustee and

President of the Plans, for violating 18 U.S.C. § 1954 (offer, acceptance of solicitation to influence

operation of employee benefit plan). On March 1, 2004, the parties to this action agreed to "stay all

further proceedings pending the final and non-appealable resolution of all pending criminal matters."

On June 29, 2004, the federal grand jury issued superseding indictments against Linder and Schreier,

adding charges for embezzlement from an employee benefit plan in violation of 18 U.S.C. § 664 to

the pending 18 U.S.C. § 1954 charges. Schreier pleaded guilty on October 20, 2004, and was

sentenced on February 2, 2005. Linder pleaded guilty on December 10, 2004, but his sentencing was

postponed as the Government continued its investigation of Linder, his companies, and others. None

of Defendants or their employees have been the subject of this criminal investigation. On June 30,

2006, Linder pleaded guilty to seven additional charges of defrauding and embezzling from several

union pension funds, including the Plans. Linder's sentencing is set for November 17, 2006. Also

set to be sentenced on November 17, 2006 is Michael J. Brdecka, who pleaded guilty to giving a

$9,700 fee and kickback to Linder.

### Plaintiff's Allegations

On February 21, 2006, Plaintiffs filed their First Amended Complaint, which dropped Linder,

JAA and Liz/Mar as defendants and instead named Nationwide Life, Nationwide Financial and

Nationwide Investment. Plaintiffs hired JAA to serve as its third-party plan administrator and plan

consultant – a fiduciary for ERISA purposes. (Am. Compl. ¶ 8.) JAA exercised discretionary

authority and control over the assets of the Plans by paying plan expenses and by making investment

decisions for the Plans. (*Id.*) Linder, himself a fiduciary to the Plans, performed these functions on

behalf of JAA. (*Id.* ¶ 9.)  Linder and JAA negotiated for their fees for these services to be received

by Liz/Mar. (*Id.* ¶ 10.)  Liz/Mar, a brokerage firm, shared a business address with JAA and its

president and primary owner was Linder's wife, Elizabeth Linder. (*Id.*)  In 1997, JAA entered a

Master Service Agreement with Nationwide Life, through which JAA would perform certain services

on behalf of Defendants for investors that JAA referred to Defendants. (*Id.* ¶ 11.)  Linder and JAA

then caused the Plans to invest with Defendants under contracts with Nationwide Life. (*Id.* ¶¶ 12-

13.)  As a result, Linder was paid commissions and other fees from the invested assets of the funds.

(*Id.* ¶¶ 12, 14-15.)  Defendants knew that the commissions and consideration that Linder and JAA

charged were excessive. (*Id.* ¶ 25.)  Defendants knew or should have known that the investments

that Linder and JAA made were risky and were outside the Plans' guidelines for investments, yet

Defendants allowed Linder and JAA to make the investments anyway. (*Id.* ¶¶ 16, 17, 19.)  These

investments resulted in financial gains for Defendants and substantial losses for the Plans. (*Id.* ¶¶

18, 20.)

## DISCUSSION

**I.      Motion to Continue the Stay**

Defendants originally requested that the Court continue the stay of this action pending the

final and non-appealable resolution of all criminal proceedings initiated against Linder, his

companies, and others, including Schreier and other fund trustees and managers.  Based on the

recently entered pleas of guilty by Linder and Brdecka, Defendants now request that the Court

continue the stay until Linder and Brdecka are sentenced on November 17, 2006.

"[A] district court possesses substantial discretion to control its docket," including the

inherent power to stay a case when justice requires. *Employers Ins. of Wausau v. Shell Oil Co.*, 820

F.2d 898, 902 (7th Cir. 1987). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). In determining whether to stay civil proceedings because of a pending criminal action, a court may consider:

> (1) whether the two actions involve the same subject matter; (2) whether the two actions are brought by the government; (3) the posture of the criminal proceeding; (4) the effect on the public interests at stake if a stay were to be issued; (5) the interest of the plaintiffs in proceeding expeditiously with this litigation and the potential prejudice to plaintiffs of a delay; and (6) the burden that any particular aspect of the proceedings may impose on defendants.

*Cruz v. County of DuPage*, 1997 WL 370194, *2 (N.D. Ill. 1997).

Defendants previously moved to stay proceedings in a civil action brought against them by other pension funds pursuant to the Racketeering Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq. See Bd. of Trustees of the Ironworkers Local No. 498 Pension Fund v. Nationwide Life Ins. Co.*, 2005 WL 711977 (N.D. Ill. 2005). Judge Guzman in *Ironworkers* denied Defendants' motion to stay. Defendants' arguments in favor of a stay were essentially the same as those presented to this Court, the only notable difference being that this case involves ERISA and *Ironworkers* involved RICO. Under ERISA, Defendants cannot be held liable unless Linder himself violated ERISA. For this reason, Defendants contend that without full discovery from Linder, in particular, that they will be prejudiced in their defense against Plaintiffs' claims; such full discovery being impossible if Linder asserted his right against self-incrimination.

Weighing the relevant factors, Defendants have not demonstrated that a continued stay of the proceedings is needed. Looking at the first factor, the two actions involve the same subject matter. Linder's Plea Agreement, entered into on June 30, 2006, admits that Linder concealed from the pension benefit plans that he received at least $4 million in commissions, fees, and bonuses from

Nationwide. Also, Linder admits that he disguised the truth that the investments made with Nationwide were group annuity contracts, not mutual funds. Since these actions form the basis of Plaintiffs' civil complaint, the overlap of issues initially weighs in favor of a stay. *See United States v. All Meat & Poultry Prods.*, 2003 WL 22284318, *2 (N.D. Ill. 2003) (the overlap of issues "tends to support the entry of a stay in the civil proceedings").

Next, the fact that the government is not a plaintiff in the civil action weighs against a stay. *See Ironworkers*, 2005 WL 711977, *10. Third, the posture of the criminal proceeding weighs heavily against a stay. By pleading guilty, Linder and Brdecka have waived their privilege against self-incrimination as to the matters for which they have pleaded guilty. *See Godinez v. Moran*, 509 U.S. 389, 397 n.7 (1993), citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *United States v. Lumpkins*, 845 F.2d 1444, 1448 (7th Cir. 1998). And since these matters include the claims in this civil case, the overlap of the issues between the two proceedings actually supports lifting the stay. On the fourth factor, Defendants have not identified any reason why the public interests at stake will benefit if the stay were continued.

Fifth, a plaintiff always has some interest in proceeding expeditiously with their litigation, an interest that already has been delayed here by waiting for the resolution of the criminal proceedings against Linder. Other than this general interest, however, Plaintiffs do not identify any particular prejudice.

Sixth, Defendants have not established any substantial burden that will be imposed on them by the civil case going forward. Typically, a substantial burden arises when a defendant is also a defendant in a criminal case. *See Cruz*, 1997 WL 370194, *4 ("[D]efending a civil action involving the same matter for which a party is under indictment is a severe burden"). But none of Defendants

6

are defendants or potential defendants in the criminal case and no Fifth Amendment privilege is threatened. *See Hicks v. City of New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003) (stay most appropriate when civil proceedings would undermine a party's Fifth Amendment privilege against self-incrimination and expose the basis of a party's criminal defense in advance of trial"). Defendants focus though on the prejudice stemming from their inability to defend themselves at trial without complete discovery from Linder and his co-conspirators. But this potential prejudice has been relieved by Linder's guilty plea. Additionally, it is Plaintiffs, not Defendants, that bear the burden of proof at trial and, therefore, Plaintiffs that will suffer the greatest prejudice from the unavailability of discovery from Linder and others. Weighing the above factors, this Court denies Defendants' motion to continue the stay. Linder's and Brdecka's depositions will not be taken before they receive their sentences on November 17, 2006.

## II.     Motion to Dismiss

When considering a motion under Rule 12(b)(6), a court must take as true all facts alleged in the complaint, and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). A Rule 12(b)(6) motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Section 502(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). Defendants argue that dismissal is proper because they are non-fiduciaries with respect to the Plans, Plaintiffs' claims for relief do not lie in equity as required by

§ 502(a)(3) and Plaintiffs have pleaded insufficiently the role of Defendants Nationwide Financial and Nationwide Investment.

### A.    Non-Fiduciary Liability under § 502(a)(3)

Plaintiffs allege that Linder and JAA breached their fiduciary duties under ERISA §§ 404(a)(1)[1] and 406(b)(3)[2] and that Defendants are liable for their participation in Linder's and JAA's breaches.  Although Defendants are not fiduciaries with respect to the Plans, the Supreme Court has held that a party may be liable under § 502(a)(3) even if they are not a fiduciary.  *See Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (2000).  *Harris Trust* dealt with an alleged violation of § 406(a),[3] but its reasoning applies with equal force to alleged violations of §§ 404(a)(1) or 406(b)(3).  The Court reasoned that § 502(a)(3) allows redress for an act or practice that violates ERISA regardless of whether ERISA's substantive provisions expressly impose a duty on the party being sued.  *See Harris Trust*, 530 U.S. at 246, 248-49.  And that § 502(a)(3) "admits of no limit . . . on the universe of possible defendants." *Id.* at 246.  Because the holding of *Harris Trust* relied on an interpretation of § 502(a)(3), not § 406(a)(1), it governs any suit under § 502(a)(3) alleging an ERISA violation.  *See Daniels v. Bursey*, 313 F. Supp. 2d 790, 807-08 (N.D. Ill. 2004) (applying *Harris Trust* to a claim under § 405(a)(1)).  "In short, to plead a claim against a

---

[1] Section 404(a)(1) requires that a fiduciary discharge his duties with respect to a plan solely in the interest of the beneficiaries and with the care, skill, prudence, and diligence of a prudent man.  29 U.S.C. § 1104(a)(1).

[2] Section 406(b)(3) provides that a fiduciary shall not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

[3] Section 406(a) prohibits a fiduciary from causing the plan to engage in certain transactions with a party in interest.  29 U.S.C. § 1106(a).

nonfiduciary under § 502(a)(3), . . . the plaintiff must allege only that a fiduciary violated a substantive provision of ERISA and the nonfiduciary knowingly participated in the conduct that constituted the violation." *Id.* at 808. Plaintiffs have so pleaded. The only question that remains is what manner of relief is available against the non-fiduciary Defendants for their alleged participation.

**B.      Other Appropriate Equitable Relief under § 502(a)(3)**

Section 502(a)(3) authorizes a plaintiff to obtain other appropriate equitable relief. 29 U.S.C. § 1132(a)(3). "Equitable relief" in § 502(a)(3) refers to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993). Whether certain relief is available under § 502(a)(3) does not depend simply on applying an equitable label, such as restitution or disgorgement, because "not all relief falling under the rubric of [these remedies] is available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). Instead, the determination of whether the relief sought lies in equity or in law "depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Id.* at 213 (citation omitted).

A legal claim exists when the plaintiff "could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." *Id.* (emphasis in original), quoting 1 D. Dobbs, Law of Remedies § 4.2(1), at 571 (2d ed. 1993). An equitable claim to relief, usually in the form of a constructive trust or an equitable lien, exists "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* Thus, for a claim to lie in equity, "the action

9

generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

Plaintiffs seek two forms of relief from Defendants: (1) restitution of the unlawful commissions, fees and other consideration that Defendants paid to Linder, JAA and Liz/Mar; and (2) disgorgement of Defendants' profits from their participation with Linder in unlawful transactions concerning Plan assets.

Plaintiffs' claim for restitution of the unlawful commissions and fees that Defendants paid to Linder and the business entities that he controlled does not lie in equity. An essential aspect of equitable restitution is that it imposes a constructive trust or equitable lien on funds or property in Defendants' possession. *See id.* at 213. The funds that Plaintiffs seek are not in Defendants' control. As such, Plaintiffs are seeking to hold Defendants personally liable for the commissions and fees paid to Linder and his business entities. *See id.* at 214. Restitution of this nature is legal rather than equitable and not available under § 502(a)(3). *See id.* (relief not available under § 502(a)(3) where the proceeds from the tort-action settlement were not in defendants' possession but had been transferred to a third party); *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 571 (1990) (claim not equitable where the backpay sought by plaintiffs was not money wrongfully held by the Union, but wages and benefits they would have received from the employer had the Union processed the plaintiffs' grievances properly). If Plaintiffs desire relief in equity, they must sue those parties – Linder, JAA and Liz/Mar – that wrongfully possess the funds.

Plaintiffs may recover, in equity, Defendants' alleged profits from their participation with Linder and JAA in the unlawful transactions. *See Tull v. United States*, 481 U.S. 412, 424 (1987) (describing disgorgement of improper profits as being "traditionally considered an equitable

remedy"); *see also S.E.C. v. Buntrock*, 2004 WL 1179423, *3 (N.D. Ill. 2004) ("[T]he Supreme

Court has held, in the ERISA context, that disgorgement is a viable equitable remedy to recover

improperly received profits"), citing *Harris Trust*, 530 U.S. at 250-51; *Mertens*, 508 U.S. at 260.

Plaintiffs have identified the particular funds sought – Defendants' profits related to the Plans'

investments – and these funds are in the possession of Defendants. *See Sereboff v. Mid Atlantic*

*Medical Srvcs., Inc.*, 126 S.Ct. 1869, 1874 (2006) (finding restitution equitable under ERISA when

plaintiffs sought identifiable funds in defendants' possession). In addition to the nature of the relief

sought, the basis for Plaintiffs' claim also supports relief in equity. When "the wrong consists of a

breach of fiduciary obligation – the kind of breach traditionally actionable in suits in equity . . . the

usual form that restitution takes is to impress a constructive trust on the profits of the wrongdoing."

*Williams Electronic Games, Inc. v. Garrity*, 366 F.3d 569, 577 (7th Cir. 2004) (applying *Knudson*).

Accordingly, Plaintiffs may pursue relief against Defendants for disgorgement of profits allegedly

made from Defendants' participation with Linder in unlawful transactions concerning Plan assets.

However, Plaintiffs have no equitable claim against Defendants for restitution of the unlawful

commissions, fees and other consideration that Defendants paid to Linder, JAA and Liz/Mar.

> ### C.     Allegations Against Nationwide Financial and Nationwide Investment

While a plaintiff need not "plead facts that, if true, establish each element of a 'cause of

action'," *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.

1994), the allegations must "provide the defendant with at least minimal notice of the claim." *Kyle*

*v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998). Defendants argue that Plaintiffs have not

provided any notice regarding the conduct of Nationwide Financial and Nationwide Investment for

which Plaintiffs complain.

Nationwide Life and Nationwide Investment are subsidiaries of Nationwide Financial. Nationwide Life allegedly entered in a service agreement with JAA and, thereafter, certain of the Plans entered into annuity contracts with Nationwide Life. Lumping Defendants together, Plaintiffs allege that all three entities participated in the unlawful transactions involving the investment of the Plans' assets and that all three entities gained financially as a result.[4] Specifically, all three entities paid excessive commissions and fees to Linder and JAA and allowed Linder and JAA to invest Plan assets in high-risk, non-diversified investments. Thus, the allegations state, in short and plain terms, the complained of conduct against each defendant.

Plaintiffs do not plead themselves out of court by attaching documents that indicate that they are not entitled to judgment. *See Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). All of the documents attached as exhibits to the Complaint identify only Nationwide Life as contracting with the Plans. But nothing in these documents contradicts the allegations that Nationwide Financial and Nationwide Investment also participated in the transactions and/or benefitted financially from them. As such, Plaintiffs have pleaded adequately their claims.

## Conclusion and Order

Wherefore, Defendants' Motion to Continue the Stay is denied. Defendants' Motion to Dismiss is granted in part and denied in part. Although Plaintiffs cannot recover equitably from Defendants the commissions and fees paid to Linder, JAA and Liz/Mar, Count I is not dismissed.

---

[4] By making these allegations against Nationwide Financial and Nationwide Investment, Plaintiffs are "certifying that to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

The unlawful payments alleged therein still may constitute the ERISA violation that is a necessary predicate for liability against the non-fiduciary Defendants.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: October 10, 2006